Please report. I'm James C. Angleton and I represent Mr. Rothman Kasi. And I respectfully request a remand and I request two minutes for rebuttal, please. That's it? No, no, no. Okay. Now, okay, Mr. Kasi's right to due process was violated, partly because the administrative agency did not appropriately evaluate his convention against torture claim. Well, let's just get to the heart of this. Let's just suppose that the lawyer had the full transcript and had a chance to offer a brief to the BIA and, you know, he could argue credibility and whatever. So what would the lawyer have said about Kat? Okay. First of all, I would say that the attack that resulted in the hospitalization in July 1997 was a credible claim to torture, because the trouble is, is that they introduced a faulty translation. But then the interpreter, who was under oath, read the gist of that into the record, and the government lawyer did not object. And that is in the direct testimony. So here's my concern. So he was found not credible. And that credibility finding is hard to attack. In fact, you don't really, you don't really amount much of a challenge to the credibility finding. Now, Kat, now, our case law is pretty clear that just because there's an adverse credibility finding doesn't mean that it washes, in fact, we use the term, the court used the term washes over to the Kat claim, because we know that the regulations on Kat require the immigration judge to take a look at all the evidence, country conditions, and any other evidence that shows that the claimant's particular condition is such that if we turn to the government, whatever his particular situation is, he would be subjected to torture. Now, the IJ's opinion is not very good when it comes to the Kat claim. But what is there in the record, apart from his credibility, that would suggest that he might have a Kat claim? So you say there's this medical record. Is there anything else? There are the proofs that he was in the Democratic Party. And then there's the country condition reports. And what do the country condition reports tell us about members who are in the Democratic Party? First of all, in 1997, Albania totally collapsed because of these tensions between the two parties. And there was the, quote, introduction of a multinational protection force led by Italy, went in to stabilize the Democratic Party and its leader, Salih Barisha, were thrown out. And Fatos Nano came in as a Socialist Party representative. Now, Mr. Nano had been probably, because of trumped-up charges, put in jail in 1994. And the same report goes into the fact that later a court found that this conviction was not based on facts. Okay. Let me ask you this. Now, in the motion to reopen, on this particular issue of Kat, the Kat claim, was there additional information provided other than what was in the record originally before the? Yes, sir. Okay. Let me ask you one other question now. It's sort of a technical question. But in the notice to appeal, now, we're talking about there's the direct appeal, seeking review, and then there's the motion to reopen. But in the direct appeal, did, in the notice of appeal that was filed, did he raise, whoever filed the notice of appeal, did they raise the Kat claim? Not specifically, but they did say that the judge had not looked at the entire record as he should have looked at it. So we should construe from that that he, that was an attempt to raise the Kat claim? Yes, Your Honor. Also, the board said, I believe it was in the denial of my motion to reopen, it said that it had reviewed the conviction against the Kat claim. The government doesn't seem to take issue with that. Pardon me? The government doesn't seem to take issue with that. It did in the, it replied briefly. It said there wasn't jurisdiction. But the case law says that if the BIA says that it has reviewed a matter, that settles the jurisdiction issue. Anything else? Well, I think that the, we see also AR 553, the judiciary is subject to corruption and executive pressure. There were complaints of unqualified and unprofessional judges. Now, in the State Department reports, there's a discussion of how a leading justice was forced out three years before his term was supposed to end by the Socialist Party. And we see this tension between these two groups. And then the main reason for the non-credibility finding was the finding that he was not a judge in the Toronto court, as this certificate had said he was. And it resolved it, I think, from the... Well, there were other reasons for the adverse credibility finding. Testify that his wife was still back in Albania and his wife was here in the United States. Yes, sir. Oh, I'm not disputing those two findings, two other findings about that or his father-in-law. But what I am disputing, the IJ said that the finding about the certificate was the basic... Okay, if standing alone would deny him, would be grounds for the adverse credibility finding. And then he quoted from the report, but he substituted the term respondent for the incorrectly used words of Rahman Qasi. So otherwise, there was a material reliance on a misrepresentation, and it was done by two immigration judges, two trial attorneys, and Mr. Qasi's wife. Well, even if I'm not... Well, even some of the other records use the name, use the H instead of the F. Yes, sir, and this was another... Records not having anything to do with the judiciary or the court. I think this goes to the ineffective assistance of counsel. No, records that came from Albania have... I'll tell you... At least that are translated. Okay, the translations incorrectly in certain parts identify him as R-R-A-H-M-A-N. But I didn't see anything that in the original, looking at the original Albanian for that type of... You may be right. I may have been mistaken. This is what the AR-505, the chairman of the court, is spelled K-R-Y-E-T-A-R-I-G-J-Y-K-A-T-E-S. He was never asked about anything, and he is the one who certifies this in the Albanian version, and that version refers to him as Rahman, R-R-A-F-M-A-N. It's mistranslated to R-R-A-H-M-A-N. Do you want to say it's in time for rebuttal? Yes, thank you, Your Honor. All right. Good morning, Your Honors. May it please the Court. My name is John Blakely, representing the Attorney General of the United States. Now, counsel seems to attribute many of the errors that were made earlier to ineffective assistance of counsel. And in doing so, he ignores one of the fundamental problems here, and that is in order to establish that there's a due process issue here, he has to establish prejudice. And because, as you have noted, Judge Baez, that he has failed to address the adverse credibility determination, in particular the two serious inconsistencies, because he hasn't done that, he's unable to establish prejudice in this case. Well, you know, I sort of just zeroed in on the Catt claim, because our case law is pretty clear that even if you have suffered an adverse credibility finding on holding, that doesn't automatically wipe out the Catt claim if there's other evidence in the record that could support it. That's true. Kalamathas, I think. That's true, but it doesn't make the adverse credibility determination irrelevant. No, that's correct, but especially where there's no other evidence in the record. And then there's another case that says where there's no other evidence in the record, and they only point to the basis for the asylum claim. That pretty much terminates the claim under Catt. But he did provide a country conditions report about how the members of the Democratic Party in Albania are treated. It doesn't look good. Well, there are some problems. I don't think that the State Department country reports certainly don't establish that every member of the Democratic Party is. But he doesn't have to present a ton of evidence to at least make a threshold showing. But doesn't he have to at least show some individualized application of the country report to his situation, to someone in his situation? He can't just put the country report in and say that that means that I individually am going to be tortured. Exactly, Your Honor. And that's where the adverse credibility determination comes in. Because once you apply that determination, you take away most of what would connect him to what's in the State Department country reports. Because absent the adverse credibility determination, he's nothing more than somebody who has presented a document that purports to be a membership card for the Democratic Party in Albania. He has nothing more than that to connect him in an individualized way to what the State Department country reports have to say. And all this assumes that this court has jurisdiction to address his Convention Against Torture claim. Because the government's arguing here that he failed to exhaust that, his administrative remedy with respect to Convention Against Torture. But if the board addressed it, then do you have an exhaustion issue if the board went ahead and addressed the CAC claim? Well, the important issue there is not whether the board made the determination, but whether there was an appropriate analysis of that claim. And whether it was properly briefed and approached by both sides. Go ahead. Go ahead, Your Honor. What case authority supports your argument that unless the board properly analyzes an issue, it's not sufficiently addressed for exhaustion purposes? I don't have that off the top of my head, Your Honor. I'd have to get back to you on that. But even assuming that this court has jurisdiction, though, the petitioner has not met his burden of proof in establishing that the record evidence shows, that the record evidence compels the conclusion that the board was wrong when it said he didn't. That's a different question. But I was just going to say, you know, our case law is pretty generous when it comes to exhaustion issues. We read those notices of appeal fairly generously. Then if this is read generously, then you could see that as addressing the Convention Against Torture claim, especially considering the adverse credibility determination is so important to the eventual determination of whether or not he had a claim for a conviction. The question in my mind was really whether he presented sufficient evidence apart from his credibility, apart from what he testified to that was rejected on credibility, other evidence that would show that if he were sent back to Albania, it's more likely than not that he would be subjected to torture. Your Honor, certainly he has not presented sufficient evidence to establish that, to meet his burden and to compel the conclusion that he would be tortured. I think that we've covered the due process. I think we've covered the adverse credibility determination. Let me ask one other question about the due process claim. So the claim was that they didn't get a copy of the transcript. They didn't file an appeal brief, if I'm not mistaken. And the board says, well, we read the record and we were able to decide the merits of this. So what good is a lawyer? I mean, who needs a lawyer if the board is going to say, well, we read all the record. We addressed the merits of these claims. Your Honor, I've asked myself the same question. Who needs a lawyer in all this? I mean, my goodness, we'll just get to the heart of this and we'll decide it. Lawyers just get in the way. The answer to that question in this particular case is that no lawyer in this case could have done anything, could have argued anything to the board to get over the adverse credibility determination. This adverse credibility determination is just about as solid as you will see. Two direct intentional lies to the court that were repeated on different dates. It's rock solid. That's my argument there. And there is case law. So you don't think a knowledgeable lawyer could have, even with that adverse credibility finding, that no, let's just take a lawyer from, I don't know, some fancy firm could have taken that or whatever. Any lawyer who's really knowledgeable in immigration law couldn't have taken that record. And even in light of the adverse credibility finding, it made a pretty good argument about why the IAJ did not properly address Catt. I agree with that, Your Honor. There's no attorney who could have overcome this adverse credibility determination. Two direct intentional lies to the court, motivated by his fear that if he did not lie, he would not be granted asylum. So based on that adverse credibility determination, I think I'm going to ask this court to deny the petition for review.  Thank you, Your Honor. Thank you, Your Honors. May I please report? I'd like to. Some of the letter briefs that I submitted, one was Z-O-L-O-T-U-K-H-I-N. And on 1-0-7-7, we may infer prejudice, this is a quote, I believe, yes, from Agyeman. We may infer prejudice even absent any allegations as to what the petitioner or his witnesses might have said if the IJ had not cut off or refused to permit their testimony. Now, here, by not giving me the entire transcript of the direct, there's a cutting off of testimony. And they're inferring prejudice. Also, the failure to file a brief raises a presumption of prejudice that has to be rebutted. I don't think the presumption has been rebutted. I think we have enough to show with the country condition reports in that one incident. Now, there's another letter brief that I submitted. We've got them. Okay. But with this one also, petitioner need not explain exactly what evidence he would have presented. I mean, what we're dealing here is the willful determination of a board not to issue a transcript. We got it. Okay, thank you, Your Honors. Thank you so much for your arguments. We appreciate both arguments from the government and from Petitioner's Council. And the matter will be deemed submitted.
judges: Paez, Rawlinson, Conlon